CIRCUIT COURT FOR MULTNOMAH COUNTY, FEBRUARY TERM, 1869.

## H. W. HEATH v. R. GLISAN AND R. B. WILSON.

LIABILITY OF A SURGEON.—A physician or surgeon is only responsible for ordinary care and skill, and for the exercise of his best judgment in matters of doubt. The words ordinary care and skill are here used in their common acceptation.

ORDINARY SKILL.—By ordinary skill is meant such skill as is commonly possessed by men engaged in the same profession.

SURGEON NOT LIABLE FOR ERROR IN JUDGMENT.—If the defendants possessed ordinary skill and used ordinary care, they are not liable for an error in judgment committed in a case presenting grounds for doubt or uncertainty.

EXPERTS.—Opinions of men skilled in a particular art or science are admitted to aid the judgment of the jurors.

MEASURE OF DAMAGES.—Either the plaintiff is entitled to recover full compensation for the injury, or the defendants are entitled to be wholly exonerated.

THE plaintiff, having received a severe injury at the elbow joint, was treated for the injury by the defendants as his physicians and surgeons; and he brings this action alleging want of proper treatment for the injury, claiming damages to the amount of $50,000.

The defendants (although not partners) answered jointly, denying the allegations of the complaint, averring that they treated the case with care, skill and diligence, and alleging negligence on the part of the plaintiff. These averments were met and denied by a replication.

On the trial the injured arm was exhibited, being in a condition of permanent dislocation at the elbow. The principal matters of fact controverted on the trial were the following: Was there a fracture? If a fracture, where, and to what extent? Was the dislocation ever reduced? Were the parts in apposition at the time the plaintiff resumed his labor? If the injured limb was reduced, did re-dislocation occur before or after the defendants had ceased to treat the case? Could re-dislocation have been produced by involuntary muscular contraction? Was the plaintiff guilty of negligence contributing to the want of successful treatment?

The proofs showed that the plaintiff was a young man who had engaged successfully in a lucrative business, requiring his personal labor and the use of his hand that was now disabled. And that the defendants were physicians and surgeons of high standing in their profession. Many surgeons were examined as experts, and the evidence is too voluminous to be inserted.

*Messrs. Coples* and *Cronin*, for the plaintiff.

*Messrs. Strong, Mitchell* and *Page*, for the defendants.

UPTON, J. The court gave the following instructions to the jury:

Inasmuch as it devolves on you to decide all disputed questions of fact involved in the case, it is important that you clearly understand, and constantly keep in mind, what questions of fact are in dispute between the parties. It will aid you in your deliberations if you carefully observe what rules are established, to determine the liabilities of physicians and surgeons in cases of this kind. The rules of law applicable to the subject are settled and established with a good degree of certainty, for this is not a new subject and the rules are not new. It is charged by the plaintiff, "that the defendants failed to treat the plaintiff's injury in a skillful and proper manner." That "through ignorance or otherwise, the defendants mistook the nature of the plaintiff's injury, and treated the plaintiff for injuries he had not received."

The defendants claim that they treated the case in a proper manner, and with care and skill.

This is a civil action for damages, and the facts are to be determined by you, according to the preponderance of evidence. The rules of law that regulate the duties and liabilities of physicians and surgeons, in cases of this kind, may be stated as follows:

" A physician or surgeon is only responsible for ordinary care and skill, and for the exercise of his best judgment in matters of doubt. He is not accountable for a want of the highest degree of skill. And in determining whether

the practitioner possesses ordinary skill, regard must be had to the advanced state of the profession at the time.

"An action does not lie where it appears that the plaintiff refused to coöperate with the practitioner, and to conform to his prescriptions." (a)

The first question of fact in the case, is this. Were doctors Glisan and Wilson possessed of ordinary skill, and did they exercise ordinary care and diligence in treating the case?

The words ordinary skill and ordinary care, are here used in their common acceptation and meaning, and they should be so understood and construed by you.

By ordinary skill, is meant such degree of skill as is commonly possessed by men engaged in the same profession.

If, under the circumstances of this case, the nature of the plaintiff's injuries could have been ascertained by ordinary skill, and by the exercise of ordinary care and diligence, and the defendants, either for want of ordinary care, or of ordinary skill, mistook the character of the injury, and thereby failed to make a perfect cure, which otherwise might have been made, they are liable. But if they possessed ordinary skill, and use ordinary care, they are not liable for an error in judgment, committed in a case presenting ground for doubt or uncertainty.

When you retire for deliberation, among the questions of fact that will present themselves to your minds, these are some of the most prominent. Did the defendants possess ordinary skill in their profession? Did they treat the case with care? Was the arm fractured? If there was no fracture, was it clear or was it doubtful to surgical skill, whether there was a fracture? If the arm was not fractured, and ordinary skill and care would have discovered that fact, was the treatment proper to be used in a case, where there was no fracture?

In determining whether the defendants possess ordinary professional skill, it is proper to consider the evidence in regard to their education, the time, and greater or less ex-

---

(a) Wharton v. Stillé, Med. Jurs., 1273.

tent of their practice and experience in the profession, as well as other evidence touching the question.

On the question whether the defendants used ordinary care in treating the plaintiff's case, all the evidence that tends to show what degree of attention they gave to the case, should be considered by you, as well as the proof of their mode of treatment, and the testimony of physicians and surgeons as to what is proper treatment. The opinions of men skilled in a particular art or science may be resorted to with propriety in all cases where the question involved depends on skill and science in a particular department. "Some questions lie beyond the scope of the observation of men in general, but are quite within the experience and observation of those whose peculiar pursuits and professions have brought that class of facts frequently and habitually under their consideration." "And such opinions, when they come from men of great experience and in whose correctness and sobriety of judgment just confidence can be had, are of great weight and deserve the respectful consideration of a jury. But the opinion of a medical man of small experience, or of one who has crude and visionary notions, or who has some favorite theory to support, is entitled to very little consideration. The value of such testimony will depend mainly upon the experience, fidelity and impartiality of the witness who gives it." (b).

In determining whether the practitioner possesses ordinary skill you are to consider the degree or condition of advancement of the medical profession at the time the case was treated.

In cases where it is doubtful which of two or more modes should be pursued, the practitioner must exercise his best judgment.

If the evidence shows that the defendants did not possess ordinary skill or did not use ordinary care, or in case of doubt, that they did not use their best judgment, and that for one of these reasons they failed to cure the plaintiff, they are liable. If the evidence does not show such failure

---

(b) Wharton & Stillé, S. 95, N.

on their part, the defendants are not liable in this action, even though they may have erred in judgment. The provision of law, that a case of doubt only requires of the practitioner ordinary skill and care and the exercise of his best judgment, is founded upon the great truth in nature, that there are injuries and diseases that baffle the skill of the most learned and most experienced of physicians and surgeons. If the faithful and skillful physician were liable to answer for every error of judgment, it would place the medical profession beyond the reasonable protection of the law. Every death that occurs under the care of a faithful and skillful practitioner, is proof that there is a limit to medical skill and power.

The object of the law is, on the one ·hand, to guard the patient against the wrongful practices of ignorant or negligent men, who set themselves up as physicians or surgeons, and on the other, to protect the faithful practitioner of ordinary skill from loss either in character or in his purse, on account of matters for which it would be unreasonable to hold him responsible.

You are to decide all questions of fact involved in the case, unbiased by sympathy or by regard for either party, according to your convictions of the truth.' And you are not at liberty to swerve from those convictions by assenting to a compromise that is contrary to what your convictions of the truth justify.

Either the plaintiff is entitled to recover compensation for the whole injury he has suffered by the fault of the defendants, or the defendants are entitled to be wholly exonerated. It is the right of each of these parties that the case should be determined upon the evidence and according to the law. It is the duty of each juror carefully and patiently to canvass and consider the evidence, in all its bearings, with an honest and conscientious effort to reconcile any difference that may exist between him and his fellow jurors, as to the truth of the matters put in issue, and with a willingness to adopt the views of his fellow jurors, when he can see that they accord with the law and the evidence. But it would be a gross wrong to one or the other of these parties,

to carry the spirit of compromise to the extent of yielding to that which you do not believe to be true, and to render a verdict merely for the sake of compromise, that you do not believe to be in accordance with the truth.

The jury, after being out forty-eight hours, failing to agree, were discharged without a verdict.    (b)

---

CIRCUIT COURT FOR MULTNOMAH COUNTY, FEBRUARY TERM, 1869.

---

(b) At the June term, 1869, the case was again tried, in substantially the same manner as at the first trial. The charge to the jury was the same. It is understood that on the first trial the jury stood: two for a verdict of $50,000 in favor of the plaintiff, and ten for the defendants. On the second trial it is said the jury stood: six for giving the plaintiff some large amount (the amount not determined upon), and six for the defendant. Before the commencement of the following term the case was withdrawn.