John Osnes, Appellee, v. F. T. Scanlon, Appellant.

PHYSICIANS AND SURGEONS: Exercise of Skill—Evidence. A
1  physician or surgeon sued for malpractice should be permitted
   to testify whether, in the treatment of the patient, he exercised
   his best skill, knowledge, and judgment.

APPEAL AND ERROR: Curing Error. Error in excluding a ma-
2  terial question is not cured by the fact that the question indi-
   cates what the answer would have been, had an answer been
   permitted.

PHYSICIANS AND SURGEONS: Conclusion Evidence. A question
3  is objectionable which calls upon a physician witness to state
   whether a patient could endure the pain of an indicated condi-
   tion, "without sedatives and without the loss of any weight."

*Appeal from Cerro Gordo District Court.*—Joseph J.
Clark, Judge.

November 23, 1920.

Action to recover damages on account of alleged mal-
practice in the treatment of plaintiff's fractured leg.
Trial to a jury, verdict and judgment for plaintiff for $500.
Defendant appeals.—*Reversed.*

*Ira W. Jones* and *Dutcher, Davis & Hambrecht,* for ap-
pellant.

*E. B. Stillman* and *Senneff, Bliss, Witwer & Senneff,* for
appellee.

Preston, J.—1. Plaintiff fell from a scaffolding, and
sustained a fracture in each of the bones of the leg above
the ankle. The defendant admits that he was plaintiff's

physician, as alleged, and that, at the times stated in the petition, he was a practicing physician and surgeon, practicing in the vicinity of Clear Lake, Iowa; admits, also, that plaintiff had a fracture of the bones of the leg; denies all claims of negligence. Several grounds of negligence are alleged, but we do not understand plaintiff to claim that defendant did not possess the requisite skill and learning. The allegations are, for the most part, if not entirely, that defendant failed to use and exercise the proper degree of skill. The trial court sustained plaintiff's objections to questions propounded to the defendant, which rulings appellant assigns as error; and we understand appellee to concede that the rulings were erroneous. The record is:

*1. PHYSICIANS AND SURGEONS: exercise of skill: evidence.*

"Q. Now this is a question that I presume is direct examination, if the court please,—I omitted it. I want to ask you, Doctor, to tell this jury whether or not, in the treatment of this plaintiff, you gave him the benefit of your best judgment and best skill.

"Mr. Senneff: We object to that as not proper redirect examination, and as incompetent, argumentative.

"Court: Sustained. I think that involves a matter for the jury to tell. He can tell what he did, and let them judge whether that was the best.

"Q. I will ask you, Doctor, whether, in the treatment of this plaintiff, you at all times gave him your best attention.

"Mr. Senneff: We object to that as not redirect examination, incompetent, argumentative. (Sustained. Exception.)

"Q. And whether or not you gave him your best skill.

"Mr. Senneff: We object to that for the same reason. (Sustained. Exception.)

"Q. And whether or not you gave him your best judgment.

"Mr. Senneff: We object to that for the same reason.

"The court: That is sustained. If I change my view

on that, why, you can renew your question. (Defendant excepts.)

"Mr. Dutcher: I want to be frank with the court. I will submit a case in the morning that I think is proper on that."

The trial court did not thereafter indicate that he had changed his view. The matter was not alluded to again. Counsel for appellant seemed to concede that the question was not redirect examination. Possibly the court had a discretion as to whether it would permit the questions on redirect examination, or require the witness to be recalled. It is apparent that the effect of the ruling was to consider the witness recalled, since the court did not sustain the objection on that ground.

Appellant cites and relies upon the case of *Ingwersen v. Carr & Brannon,* 180 Iowa 988, 1012. In the *Ingwersen* case, like evidence was offered and rejected, and this was one of the grounds of reversal. We also said in that case that we thought the rule different with a professional man: that is, that he was different from a mechanic or artisan. As bearing on this, see *Almond v. Nugent,* 34 Iowa 300; *Kline v. Nicholson,* 151 Iowa 710, 713.

No cases are cited by appellee, as against the *Ingwersen* case. Appellee concedes that the ruling was erroneous, for they say that it "constitutes the only error made by the court in this case. * * * While it must be conceded that defendant was entitled to have this question asked, under the ruling of this court in the case cited, the mere asking of it clearly indicated what the answer would be," etc.

They concede, too, that, if the *Ingwersen* case had been called to the court's attention, the ruling would have been different. Appellee's only answer is that the exclusion of the evidence was nonprejudicial, and that counsel for defendant did not call the court's attention to the matter the next morning. As to the last proposition, the record does not show that counsel for defendant did not present the authority the next morning, though it is so stated by appellee in argument. There might be a question of good

faith of counsel towards the court, but appellee states that "they have not the slightest doubt that the failure of counsel to call the court's attention to the case was due entirely to oversight, and his forgetfulness, for the time being;" so there is no question of bad faith. The ruling had already been made. Of course, it was the intention of the court to rule correctly, whether the case had been called to the court's attention or not.

One ground of the motion for new trial was that the court erred in excluding evidence, so that there was an opportunity to correct the error in ruling on the motion.

2. APPEAL AND ERROR: curing error.

The nub of it is that the jury did not have the evidence before it which appellee concedes they were entitled to. The mere fact that the question indicates that defendant would have answered "yes" to the question does not cure the error. A question is not evidence. The fact that the court sustained the objection said to the jury, in effect, that the question should not be considered. We cannot assent to the proposition that the exclusion of the evidence was nonprejudicial. The very essence of the charge against defendant was, in effect, that he did not use the proper degree of skill; that he did not exercise the degree of skill possessed by him; that he did not use his best judgment. Without now attempting to state accurately or at length the rule as to defendant's duty, it is sufficient, in the consideration of the point now under consideration, to say that the rule is given in the books substantially thus:  In the absence of a special contract, the law implies that a surgeon employed to treat an injury contracts with his patient, first, that he possesses that reasonable degree of learning and skill which is ordinarily possessed by others of the profession; second, that he will use reasonable and ordinary care and diligence in the exercise of skill, and the application of his knowledge to accomplish the purpose for which he is employed; and, third, that he will use his best judgment in the application of his skill in deciding upon the nature of the injury, and the best mode of treat-

ment. In the instant case, the trial court instructed sub-
stantially to that effect in Instruction 5, of which defend-
ant does not complain. A part of the instruction is that,
if "the defendant possessed and used such skill, care, and
diligence, he was not guilty of negligence," etc. The de-
fendant was asked whether he used his best judgment.
No one else could testify as well as he, whether he did or
not. Of course, if he had said he did, it would not be bind-
ing on the jury, necessarily; but they were entitled to the
evidence. We are of opinion that there was prejudicial
error in the ruling.

2. Several other errors are assigned in regard to rul-
ings on evidence, but the one just noticed seems to be the
more important. The other questions may not be framed
in the same form on a retrial, so that we
3. PHYSICIANS shall not discuss the others at length. The
AND SUR-
GEONS: con- plaintiff claimed that the splints and cast
clusion evi-
dence. were so loosely put on as to allow the foot
to lie over on the bed, and move at the seat
of fracture. Dr. Phillips testified that, assuming that
to be true, he would say that the effect upon the foot of
such a situation would be very painful. Then defendant
asked:

"Q. And what would you say as to whether the pa-
tient could endure that pain without sedative, and with-
out the loss of any weight?"

Plaintiff objected, as calling for a conclusion, and not
the subject of expert testimony, and the court sustained
the objection, stating that it was a conclusion, as to the
endurance, especially.

Appellant cites *Purcell v. Jessup,* 99 App. Div. 556 (91
N. Y. Supp. 165); *Greenway v. Taylor County,* 144 Iowa
332, 336. The question asked in the *Purcell* case was:

"In your opinion and medical experience, is it possible
for a child to show no symptoms of diphtheria on one day,
and develop a fatal case of diphtheria the next?"

The question in the *Greenway* case was:

"What do you say as to whether he has suffered, during

the time since this injury, a great deal of pain?"

This was held equivalent to asking whether the injuries were of such a character as would be likely to cause pain, and it was held that it was competent; and it was further said that it is competent for the physician to say whether, in his judgment, the injuries of a person are such as would be likely to produce pain. We think the question asked in the instant case is broader than the questions in the cases cited. Dr. Phillips had already said that, in such a situation, it would be very painful. This seems to be as far as the cited cases go. Possibly the defendant could have elicited the information sought by framing the question somewhat differently: that is, for instance, how severe the pain would be, and whether the effect of that would be to cause the loss of weight, etc. We are not suggesting the form of the question, but think the question was objectionable, though perhaps we would not reverse on that ground alone.

Error 3 is similar to the question just noticed.

Error 4 relates to a question propounded by plaintiff to one of his medical witnesses, based on the assumption that the bones were out of alignment, when the cast was put on. The objection was that there was no evidence that the bones were out of apposition. The objection was overruled, because there was, in the opinion of the court, evidence which might be construed either way, as to whether they were or were not in apposition. We think such is the fact.

A number of grounds of negligence charged in the petition were submitted to the jury. The complaint of the instructions is, for the most part, that some of these were submitted, of which there was no evidence. The trial court withdrew, or attempted to withdraw, from the consideration of the jury, one or perhaps more of the grounds of negligence. Appellant contends that this was not clearly done, and that the jury were confused. The evidence may not be the same on another trial. The matter of withdrawing issues can be easily cured on another trial, if there is

anything objectionable in it, and the instruction may be worded differently.

These and other matters complained of are such that they are not likely to occur on a retrial. For the error pointed out, the judgment is reversed, and the cause remanded.—*Reversed and remanded.*

WEAVER, C. J., EVANS and SALINGER, JJ., concur.